# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROMEO HENNINGS,
        Plaintiff,
v.                                         Case No. 19-C-1304

ANTHONY MILONE,
        Defendant.

## DECISION AND ORDER

Romeo Hennings, a Wisconsin prisoner proceeding *pro se*, filed this action claiming that the defendant, a police officer, used unconstitutional excessive force when arresting him. The parties have filed cross-motions for summary judgment. As explained below, I will deny the plaintiff's motion, grant the defendant's motion, and dismiss this case.

## I. STANDARD OF REVIEW

A movant is entitled to summary judgment if he shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Material facts are those under the applicable law that might affect the case's outcome; a dispute over material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. *See also* Fed. R. Civ. P. 56(c).

## II. FACTS[1]

Defendant Anthony Milone is a police officer with the City of Milwaukee Police Department. ECF No. 49, ¶ 2. On October 31, 2018, the defendant and his partner, Police Officer Chad Boyack, were on duty and assigned to a fully marked City of Milwaukee Police

---

[1] Facts are taken from the defendant's responses to plaintiff's initial and supplemental proposed findings of fact (ECF Nos. 45 & 52), the plaintiff's response to defendant's proposed findings of fact (ECF No. 49), and body and dashboard-camera video footage (ECF Nos. 31 & 39).

Department squad vehicle equipped with emergency lights and sirens. *Id.*, ¶ 3. Affixed to the defendant's uniform on October 31, 2018 was a City of Milwaukee Police Department-issued body-worn camera, which captured video and audio related to these events. *Id.*, ¶ 5. *See also* ECF Nos. 31 & 39 (video submissions).

At about 11:30 p.m. on October 31, 2018, the defendant and Officer Boyack joined a pursuit of a white Nissan sedan. ECF No. 49, ¶ 6. During the pursuit, the defendant was aware that the Nissan matched the description of a vehicle reported to have been involved in an armed robbery that was alleged to have occurred at about 10:30 p.m. that night. *Id.*, ¶ 7. The defendant was also aware that a black handgun was reportedly displayed during the alleged armed robbery incident. *Id.*, ¶ 8. The plaintiff, who admitted to driving the Nissan,[2] led the defendant and other police officers on a high-speed pursuit for approximately fourteen miles. *Id.*, ¶¶ 10–11. During the pursuit, the plaintiff operated the Nissan at approximately 100 miles per hour, extinguished the lights of the Nissan, traveled the wrong way on divided city streets, encountered and passed numerous other motorists not otherwise involved in the pursuit, and disregarded numerous traffic control devices. *Id.*, ¶¶ 12–15, 17. Several motorists swerved to avoid being struck by the suspect vehicle. *Id.*, ¶ 16.

The defendant's pursuit of the Nissan ended at approximately 11:39 p.m. when the suspect vehicle struck an oncoming yellow taxicab and came to rest alongside a utility pole. ECF No. 49, ¶ 18. The yellow taxicab contained three occupants, two of whom suffered physical injuries as a result of being struck by the suspect vehicle. *Id.*, ¶ 19. The defendant's squad vehicle was the lead pursuit vehicle for much of this time, including the moment the

---

[2] The plaintiff drove the Nissan after another suspect got out and ran. ECF No. 52, ¶ 6. He was not the driver who started the pursuit. *Id.*

pursuit of the Nissan ended. *Id.*, ¶ 20. Probable cause existed to arrest the plaintiff on felony charges, including recklessly endangering safety and fleeing or eluding an officer. *Id.*, ¶ 21.

The defendant and Officer Boyack exited their squad vehicle soon after the Nissan came to rest. ECF No. 49, ¶ 22. The defendant ran toward the suspect vehicle's front, driver side door with his firearm drawn. *Id.*, ¶ 23. Officer Boyack immediately ran after a suspect who fled the suspect vehicle on foot, which left the defendant alone at the suspect vehicle. *Id.*, ¶ 24. The vehicle sustained significant damage and its airbags had deployed. *Id.*, ¶ 25. Due to the airbag deployment (including side-curtain airbags), the defendant's view of the vehicle's interior was obstructed. *Id.*, ¶ 26. Once at the front, driver side door, the defendant encountered the plaintiff, who was in the driver seat. *Id.*, ¶ 27. The defendant says he observed the plaintiff leaning down toward the vehicle's center console area. *Id.*, ¶ 28.[3]

The defendant approached the driver side window of the Nissan with his service weapon drawn and yelled, "I'm going to fucking shoot you mother fucker, I'm going to fucking shoot you." ECF No. 45, ¶ 4. The plaintiff says that he believes that the defendant was about to fire his weapon, so he put both hands on the steering wheel, showing he was surrendering and did not have any weapons. *Id.*, ¶ 5.[4] The video evidence reveals that the defendant yelled, "don't fucking move" at the plaintiff. *Id.*, ¶ 6 (citing BWC – PO Anthony Milone 1.mp4 at 5:55). The plaintiff asserts that he did not hear the defendant instruct him not to move. *Id.*, ¶ 7. The defendant asserts that he was concerned the plaintiff was either arming himself or attempting to take flight out of the passenger side of the vehicle. ECF No. 49, ¶ 29.

---

[3] The plaintiff objects to this assertion "on the grounds of his own facts." *Id.* But in his declaration, the plaintiff states that he does not remember exactly how his body was positioned in the driver's seat when the car he was driving crashed into the taxicab, spun out, and collided with a utility pole. ECF No. 48, ¶ 15. He also says that he does not recall reaching towards the center of the Nissan after the car came to rest. *Id.*, ¶ 16. The video evidence does not clearly show the plaintiff's exact position in the driver seat when the defendant initially encountered him.

[4] As explained in note 3, the video evidence the plaintiff relies on does not conclusively support this assertion because the video does not clearly show the steering wheel.

3

About two seconds after the defendant arrived at the driver side door of the suspect vehicle, the plaintiff placed his feet outside of the vehicle through the front, passenger side door, which was ajar. ECF No. 49, ¶ 30. The defendant returned his Department-issued firearm to his holster, reached into the suspect vehicle through the front, driver side window, grabbed hold of the plaintiff's hair, and attempted to pull the plaintiff through the window to place him in custody. *Id.*, ¶ 31. The defendant asserts that he was extremely concerned for his safety as he struggled alone with the plaintiff alongside the front, driver side door of the vehicle. *Id.*, ¶ 32. The defendant, alerting other officers arriving at the scene, started yelling, "here, here, he's here," then punched the plaintiff multiple times in the back of his head and face with his right fist, while still yanking and pulling the plaintiff by his hair, trying to pull him out of the driver side window. ECF No. 45, ¶ 11; ECF No. 49, ¶ 33. During the defendant's struggle with the plaintiff, the plaintiff pulled away from the defendant and exited through the front, passenger side door of the suspect vehicle. ECF No. 49, ¶ 34. The defendant tore some of the plaintiff's hair from his head during this initial struggle. *Id.*, ¶ 35.

Sergeant Robert Crawley arrived on the scene to assist the defendant as the plaintiff was exiting the suspect vehicle through the passenger side door. ECF No. 49, ¶ 37. After exiting the vehicle, the plaintiff tried to get away by heading toward the rear of the vehicle, but he slipped. *Id.*, ¶ 38.[5] As the plaintiff tried to get away, Sergeant Crawley took hold of the plaintiff and "decentralized" him, forcing the plaintiff to the ground. *Id.*, ¶ 39.

According to the defendant, the plaintiff continued to struggle with him and Sergeant Crawley on the ground, even after the defendant placed handcuffs on the plaintiff's wrists.[6]

---

[5] The plaintiff stresses that he slipped trying to get away from the defendant's abuse, not to take flight. *Id.*; ECF No. 48, ¶ 26.

[6] The plaintiff says he was not struggling but rather he was trying to tell the defendant and Sergeant Crawley that he could not breathe and had severe asthma. ECF No. 49, ¶ 41; ECF No. 45, ¶ 25. In his declaration, the plaintiff states that he struggled with the defendant and Sergeant Crawley

4

ECF No. 49, ¶ 41. *See also* ECF No. 39, BWC – PO Anthony Milone 1.mp4 at 6:04 & Squad – Car 514.mp4 at 10:58.

According to the plaintiff, the defendant turned the plaintiff's left wrist in a painful way while yelling, "you're going to prison for a long time," before the defendant smashed his handcuffs tightly around the plaintiff's wrists. ECF No. 45, ¶ 19. The defendant disputes this and states that the video evidence the plaintiff cites reveals that the plaintiff never alerted the defendant to any pain or discomfort related to the application of the handcuffs, and that the defendant never "smashed his hand-cuffs" on the plaintiff's wrists. *Id.*; ECF No. 49, ¶ 40.

Once the plaintiff was in custody, the defendant remained atop him to prevent the plaintiff from taking flight. ECF No. 49, ¶ 43. About one minute after he was placed in custody, the plaintiff stated, "I can't breathe;" approximately eighteen seconds later, the plaintiff stated, "I got severe asthma, bro." ECF No. 49, ¶ 44. According to the defendant, the plaintiff's difficulty breathing appeared related to his physical altercation with officers and not due to any medical emergency. *Id.*, ¶ 45. A few seconds after the plaintiff first stated he could not breathe, Sergeant Crawley stated, "Let's just get him on his side." ECF No. 45, ¶ 26; ECF No. 39, BWC – PO Anthony Milone 1.mp4 at 7:10 to 7:30. Sergeant Crawley told the plaintiff, "Deep breaths. You know how to breathe. In through your nose. Out through your mouth." *Id.*, ¶ 27. The plaintiff was still having a hard time breathing and he yelled again, "I can't breathe, I can't breathe," and started crying while he lay on his side handcuffed on the ground. *Id.*, ¶ 28. The plaintiff started yelling louder the he could not breathe, to get the attention of other Milwaukee police officers on scene and bystanders. *Id.*, ¶ 30. Then Sergeant Crawley said, "let's get him up, put him in a squad car." *Id.*, ¶ 31. The defendant

---

on the ground while they were placing him in handcuffs because he was afraid of what the defendant might do to him with only one witness. ECF No. 48, ¶ 28.

and Sergeant Crawley never called for help for the plaintiff or gave him medical aid. *Id.*, ¶ 32. About two-and-a-half minutes after his arrest, several officers, not including the defendant, placed the plaintiff into a squad vehicle. ECF No. 49, ¶ 48.

The plaintiff was then taken to St. Mary's Hospital Emergency Department. ECF No. 45, ¶ 39. He was treated for multiple injuries, and given x-rays for his neck, head, back, left side of his back and left wrist. *Id.*, ¶ 40. The plaintiff's discharge diagnosis was: Acute alcohol intoxication; Acute lumbar myofascial strain; Acute thoracic myofascial strain; Blunt trauma to abdomen; CHI (closed head injury); Cervical strain, acute; Chest wall contusion; Muscle strain of left wrist. *Id.*, ¶ 41. The plaintiff was discharged at 4:06 a.m. on November 1 and transported to the Milwaukee Police Department District # 5 for booking. *Id.*, ¶ 42.

The plaintiff says that he suffered from multiple injuries due to the defendant ripping his dreadlocks out, punching him multiple times, cuffing his wrists too tight and failing to give him medical treatment/aid after the plaintiff yelled to him multiple times that he has severe asthma and was having a hard time breathing. ECF No. 45, ¶ 60. The defendant does not dispute that the plaintiff suffered injuries on October 31, 2018. *Id.* But he asserts that the plaintiff's conduct that evening contributed to any injuries he suffered, which may have resulted from the impact of striking another vehicle and then a utility pole that caused the deployment of the Nissan's airbags. *Id.* The defendant also reiterates that the plaintiff never informed him that the handcuffs the defendant placed on the plaintiff's wrists were "too tight" or causing any discomfort or pain. *Id.* Any physical injuries the plaintiff suffered on October 31, 2018 were not apparent immediately following his arrest. ECF No. 49, ¶ 47.

The plaintiff was convicted of two felonies (Milwaukee Cty. Case No. 2018CF005266) related to his involvement in this incident: First Degree Recklessly Endangering Safety and Vehicle Operator Flee/Elude Officer Resulting in Bodily Harm. *Id.*, ¶ 55.

## III. DISCUSSION

The defendant argues that (1) the plaintiff has not shown that the force used was unreasonable under the Fourth Amendment, (2) the force used was in fact reasonable, and (3) he is entitled to qualified immunity.

A claim that a law enforcement officer used excessive force when effectuating an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010)). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id.* (quoting *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015)). When assessing whether the amount of police force was reasonable, the court looks to circumstances indicating (1) the severity of the suspected crime, (2) whether the suspect posed an immediate threat to the officer on the scene or other, and (3) whether the suspect was actively resisting or attempting to evade arrest. *Id. See also Graham v. Connor*, 490 U.S. 386, 396 (1989). The court's goal in examining these factors is to determine whether the force used to seize the suspect was excessive in relation to the danger he posed if left unattended. *Dawson*, 803 F.3d at 833 (citation and quotations omitted). If the undisputed material facts establish that the officer acted reasonably under the circumstances, the court must resolve the issue as a matter of law, rather than allow a jury to "second-guess" the officer's action. *Id.* (citing *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003)).

The plaintiff states that, when the defendant ran up to the Nissan after the crash, he had his hands on the steering wheel to indicate his desire to surrender. According to the plaintiff, the defendant abused him by roughly pulling his hair to the point that he pulled some of it out and by punching him. However, the record does not support the plaintiff's assertion

that he was trying to surrender. As an initial matter, every other action of the plaintiff's was an attempt to flee or get away from the defendant and other officers. Indeed, about two seconds after the defendant arrived at the driver side door of the Nissan, the plaintiff had placed his feet outside of the vehicle through the front, passenger side door. The video evidence shows that almost immediately after the defendant arrived at the car with his gun drawn, the plaintiff was moving toward the passenger door to get away. The defendant responded by holstering his gun, grabbing the plaintiff's hair, yelling at the plaintiff to not move, punching the plaintiff on the side of his head and shoulder, yelling "here, here, he's here", and trying to pull the plaintiff through driver side window. In short, the defendant tried to keep the plaintiff from fleeing. Finally, even if the plaintiff did have his hands on the steering wheel in the two seconds after the defendant arrived and before he placed his feet out the passenger side door, (1) the plaintiff never verbally expressed his desire to surrender and (2) the view into the vehicle was obstructed because the airbags had been deployed such that the defendant could not have seen the plaintiff's hands on the steering wheel.

When a party's assertion is contradicted by an objective record, such as a videotape, courts must view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that if one account of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). *See also Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (relying on video from a dashboard camera rather than the non-moving party's account to grant summary judgment was permissible because the video clearly depicted the physical confrontation in question); *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (explaining that while videos are sometimes unclear and may be open to varying interpretations, video footage may firmly settle a factual issue). Based

on available video evidence, I conclude that a reasonable officer would not have thought the plaintiff was attempting to surrender when the defendant arrived at the Nissan.

Likewise, the plaintiff's contention that the defendant used excessive force when he was on the ground is also not supported by the record. It is undisputed that the plaintiff tried to get away from the defendant and Sergeant Crawley after he got out of the Nissan. His struggle to get away continued after Sergeant Crawley took him to the ground. The plaintiff stopped struggling after he was cuffed and three officers were holding him down. Once he was subdued, and shortly after he said he could not breathe, the defendant and Sergeant Crawley got off of him and turned him to lay on his side. The plaintiff contends that the defendant injured his wrist by placing the handcuffs on him harshly and that they were too tight. Given that the plaintiff was still struggling when the officers had him on the ground, it is not reasonable to conclude that force used by the defendant when he handcuffed him was excessive. *See Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003) (unlawful for officers "to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes"). And once they were on, the plaintiff did not complain that they were too tight. *See Day v. Wooten*, 947 F.3d 453, 462 (7th Cir. 2020) ("[A]bsent any indication an officer is aware the handcuff tightness or positioning is causing unnecessary pain or injury, the officer acts reasonably in not modifying the handcuffs.").

In this case, it is undisputed that the plaintiff drove the Nissan in a high-speed chase on city streets at speeds up to 100 miles per hour. He only stopped when he crashed into an oncoming taxicab (injuring its three occupants) and then spun around before hitting a light pole. The defendant and his partner had information that the vehicle the plaintiff was

driving had been involved in an armed robbery committed earlier that night. The video evidence shows that when the vehicle stopped, two of its passengers got out and ran and the defendant's partner, Officer Boyack, ran after one of them. A third passenger crawled out of the passenger side, apparently injured, and laid on the ground next to the car. In the course of a few seconds, the defendant approached the plaintiff's vehicle with his gun drawn, yelled to the plaintiff that he would shoot him, put his gun away and pulled the plaintiff's hair, struck the plaintiff in his head and shoulder, yelled at the plaintiff to not move, and yelled at other officers who had just arrived on the scene that he had the suspect. The plaintiff broke free from the defendant's grasp and exited the car from the passenger side front door. He moved quickly to get away from the vehicle, but he tripped, and Sergeant Crawley grabbed the plaintiff and decentralized him. The defendant ran around to the other side of the vehicle and together the defendant and Sergeant Crawley struggled with the plaintiff before arresting him. The defendant pushed him down on the ground, held him there, and placed handcuffs on him. After the plaintiff told them he could not breathe, the defendant and Sergeant Crawley moved him to his side. Soon after, officers moved the plaintiff to a squad car.

The video evidence in the record establishes that the force the defendant used to arrest the plaintiff was objectively reasonable. The plaintiff's conduct leading up to his arrest "posed a grave public safety risk," *see Plumhoff v. Rickard*, 572 U.S. 765, 776 (2014); a reasonable officer in the defendant's position would have believed the plaintiff posed an immediate and significant threat to his and others' safety. Also, the plaintiff's efforts to resist arrest and to take flight continued until he was handcuffed. I conclude that a reasonable factfinder could not find that the defendant used excessive force. *See*, *e.g.*, *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) ("A reasonable officer would have thought that [plaintiff] was trying to flee, thereby justifying the use of a higher degree of force to protect

the community and the officers than that needed for someone who committed only a minor traffic violation."); *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) (officer's use of taser against an actively resisting subject either does not violate a clearly established right or is constitutionally reasonable); *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486–87 (7th Cir. 2011) (reasonable to use pepper spray against a suspect who is physically resisting arrest).

Because a reasonable factfinder could not conclude that the plaintiff's constitutional rights were violated based on this record, I will grant the defendant's motion for summary judgment and dismiss this case.

## IV. CONCLUSION

**THEREFORE**, **IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 27) is **DENIED** and the defendant's motion for summary judgment (ECF No. 35) is **GRANTED**. This case is **DISMISSED**. The Clerk of Court shall enter final judgment.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rules of Appellate Procedure 3 & 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. Any motion under Rule 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend either of these deadlines. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 3rd day of March, 2021.

s/Lynn Adelman_____<br>
LYNN ADELMAN<br>
United States District Judge